**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | CRIMINAL ACTION NO. 3:24-CR-00106 |
| v. | (MEHALCHICK, J.) |
| DIMITRIS SMITH, JR., | |
| Defendant. | |

**MEMORANDUM**

Following a jury verdict finding Defendant, Dimitris Smith, Jr. ("Smith") guilty on all five counts of the superseding indictment (Doc. 23), Smith filed a motion for judgment of acquittal or, in the alternative, for a new trial. (Doc. 133). For the following reasons, Smith's motion is **DENIED**. (Doc. 133).

**I.    BACKGROUND AND PROCEDURAL HISTORY**

On September 30, 2024, a grand jury sitting in the Middle District of Pennsylvania returned a superseding indictment charging Smith with the five counts related to distribution of cocaine and fentanyl and alleging that the distribution resulted in the death of Samantha Pennell ("Pennell"). The five counts included Count 1, distribution of fentanyl resulting in serious bodily injury and death; Count 2, distribution of cocaine; Count 3, distribution of cocaine and fentanyl; Count 4, distribution of cocaine and fentanyl; and Count 5, distribution of fentanyl. (Doc. 23). On January 5, 2026, the Court commenced a jury trial on the charges, and on January 9, 2026, the jury returned a verdict of guilty on all counts. (Doc. 123). The

jury unanimously found that Pennell's death would not have resulted on December 11, 2023, had she not used fentanyl distributed by Smith. (Doc. 123, at 1). On February 23, 2026, Smith moved for acquittal or, in the alternative, for a new trial. (Doc. 133). Smith filed a brief in support of his motion on March 8, 2026 (Doc. 134), and the government filed a brief in opposition on March 9, 2026. (Doc. 135). Smith filed a reply brief on March 22, 2026. (Doc. 136). Accordingly, the motion is ripe for disposition.

II.    LEGAL STANDARDS

A.  MOTION FOR JUDGMENT OF ACQUITTAL

"On a motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, the court must decide whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' based on the evidence presented at trial." *United States v. Delgado*, 367 F. Supp. 3d 286, 291 (M.D. Pa. 2019), aff'd 827 F. App'x. 180 (3d Cir. 2020) (citing *United States v. Carballo-Rodriguez*, 726 F.3d 418, 431 (3d Cir. 2013) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *United States v. Freeman*, 736 F.3d 322, 343 (3d Cir. 2014)). The Court is required to "view the evidence in a light most favorable to the prosecution." *Delgado*, 367 F. Supp. 3d at 291 (citing *Carballo-Rodriguez*, 726 F.3d at 430). The Court must deny the motion "if there is substantial evidence . . . to uphold the jury's decision. *United States v. Gambone*, 314 F.3d 163, 170 (3d Cir. 2003); *Caraballo-Rodriguez*, 726 F.3d at 430). Stated differently, the Court must "uphold the jury's verdict unless no reasonable juror could accept the evidence as sufficient to support the defendant's guilt beyond a reasonable doubt." *United States v. Fattah*, 914 F.3d 112, 183 (3d Cir. 2019); *United States v. Johnson*, No. 3:21-CR-143, 2022 WL 17627797, at *1 (M.D. Pa. Dec. 13, 2022).

The standard of review for a motion for judgment of acquittal is highly deferential, and "it is not the court's task to 'act as a thirteenth juror,' weigh credibility, assign weight to evidence, or 'substitute [its] judgment for that of the jury." *Delgado*, 367 F. Supp. 3d at 291 (citing *Caraballo-Rodriguez*, 726 F.3d at 430). "Reversing the jury's conclusion simply because another inference is possible—or even equally plausible—is inconsistent with the proper inquiry for review of sufficiency of the evidence challenges." *United States v. Garner*, 915 F.3d 167, 169 (3d Cir. 2019). Courts may overturn a conviction based on insufficient evidence "where the prosecution's failure is clear" or "where the verdict 'fall[s] below the threshold of bare rationality." *Delgado*, 367 F. Supp. 3d at 291 (citing *United States v. Leon*, 739 F.2d 885, 890 (3d Cir. 1984) (quoting *Burks v. United States*, 437 U.S. 1, 17 (1978)); *Caraballo-Rodriguez*, 726 F.3d at 431).

B.  MOTION FOR A NEW TRIAL

Rule 33 of the Federal Rules of Criminal Procedure provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Granting or denying a motion for a new trial "lies within the discretion of the district court." *United States v. Cimera*, 459 F.3d 452, 458 (3d Cir. 2006). "A court evaluating a Rule 33 motion does not view the evidence favorably to the government but instead must 'exercise[] its own judgment in assessing the government's case.'" *Delgado*, 367 F. Supp. 3d at 291 (citing *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002)). "Rule 33 motions are disfavored and should be 'granted sparingly and only in exceptional cases,'" such as "those in which trial errors 'so infected the jury's deliberations that they had a substantial influence on the outcome of the trial." *Delgado*, 367 F. Supp. 3d at 291 (quoting *United States v. Thorton*, 1 F.3d 149, 156 (3d Cir. 1993)).

III.  **DISCUSSION**

   A.  SMITH IS NOT ENTITLED TO A JUDGMENT OF ACQUITTAL.

   Smith contends that no rational trier of fact could have found the essential elements to the crimes charged beyond a reasonable doubt. Specifically, Smith avers that no rational trier of fact could have found that Smith distributed the drugs that caused the death of Samantha Pennell. (Doc. 133, at 2). Smith points to evidence presented at trial that shows Pennell had been ingesting drugs other than what was in the alleged bag of fentanyl James McGuire ("McGuire") stated he purchased from Smith on the day of Pennell's death. (Doc. 134, at 5-6). The government counters that it presented an overwhelming amount of evidence to support the conviction, including eyewitness testimony, expert witness testimony, lab reports, and cell phone records and communications. (Doc. 135, at 5).

   As the Court instructed the jury, to find a defendant guilty of distribution of fentanyl resulting in serious bodily injury and death, the evidence of record must establish four essential elements beyond a reasonable doubt: first, that Smith knowingly and intentionally distributed a controlled substance; second: that the controlled substance distributed by Smith was fentanyl; third: that Samantha Pennell used fentanyl distributed by Smith; and fourth: that the use of fentanyl by Samantha Pennel[1] was the "but-for" cause of the death of Samantha Pennell on or about December 11, 2023. (Doc. 122, at 13).

   Smith argues that no rational trier of fact could have found Smith distributed the drugs that were the "but for" cause of Pennell's death. (Doc. 134, at 5). Smith cites evidence that the alleged bag of fentanyl also contained heroin, but the heroin metabolite, 6-acetylmorphine was not in Pennell's system at the time of her death. (Doc. 134, at 5-6). Smith notes that the government's DNA expert testified that Smith's DNA was not on the fentanyl bag that Smith

4

allegedly sold to McGuire. (Doc. 134, at 3). Smith also points to evidence that methamphetamine was in Pennell's system at the time of her death but was not found in the alleged bag of fentanyl from Smith. (Doc. 134, at 5-6).

On the absence of the 6-acetylmorphine in Pennell's system at the time of her death, the government counters with evidence that the drugs provided by Smith to McGuire contained a combination of illicit substances in varying concentrations. (Doc. 135, at 7). The largest concentrations found in the drugs were fentanyl, 4-ANPP, xylazine, heroin, and cocaine, all of which were all found in Pennell's blood. (Doc. 135, at 6-7). Dr. Coyer, an expert witness in toxicology, explained that heroin quickly metabolizes into 6-acetylmorphine, which disappears in two to three hours, and that the final metabolite in the blood after ingesting heroin is morphine. (Doc. 135, at 7). While 6-acetylmorphine was not found in Pennell's toxicology, a trace amount of morphine was detected at 3.2 ng/ml, a level below the reporting limit and therefore treated as a negative result. (Doc. 135, at 3). Further, the testimony and text messages of Olga Stevenson ("Stevenson") and testimony of Pennell's minor daughter established that Pennell used the fentanyl provided by Smith while on the way to the grocery store, before dropping Stevenson off at her residence at 7:00 p.m., and before paramedics were called to Pennell's residents at 9:09 p.m. (Doc. 135, at 7).

A rational juror could find that there was no 6-acetylmorphine in Pennell's system because approximately two hours passed between the time Pennell used the fentanyl on the way to the grocery store, shopped at the grocery store, dropped off Stevenson around 7:00 p.m., and went home, where the paramedics were called at 9:09 p.m. (Doc. 135, at 7). A rational juror could also find that Pennell ingested the bag of fentanyl containing an amount

of heroin based on the trace amount of morphine, the final metabolite found in blood after ingesting heroin, present in Pennell's toxicology report. (Doc. 135, at 3).

Next, as to the evidence that Smith's DNA was not on the bag of fentanyl provided to Pennell, the government points to the testimony of McGuire, that on the date of Pennell's death, McGuire purchased and witnessed Pennell ingest the bag of fentanyl from Smith that was packaged in a blue latex glove. (Doc. 135, at 5-6). At trial, the government moved into the record DNA evidence that established Smith's DNA was found on the blue latex glove that packaged the bag of fentanyl purchased by McGuire. (Doc. 135, at 8). A rational juror could find that Smith packaged the bag of fentanyl purchased by McGuire and provided it to Pennell in a blue latex glove without touching the bag itself.

Finally, regarding the evidence of methamphetamine in Pennell's system at the time of her death, the government does not dispute that Pennell had other substances in her blood that were not found in the bag of drugs provided by Smith, such as methamphetamine, cyclobenzaprine, and gabapentin. (Doc. 135, at 8). However, the government presented Pennell's toxicology report at trial, which shows that each of these other substances found in Pennell's blood were well within the therapeutic range. (Doc. 135, at 8). In its brief in opposition, the government argues that Pennell's ingestion of these other substances does not mean that she did not ingest the drugs provided by Smith as well. (Doc. 135, at 8). The government also submits that McGuire testified at trial that Pennell was dopesick before receiving the drugs from Smith because she did not have any other drug source that day. (Doc. 135, at 5-6). The government also notes that McGuire's testimony was corroborated at trial by text messages between Smith and Pennell arranging the purchase of fentanyl, testimony and evidence presented by FBI Special Agent John Orlando, who placed Smith's cell phone

in the area of Pennell's residence at the time of the sale of drugs to McGuire, and testimony from Stevenson that she and Pennell could not find anyone willing to sell fentanyl to them on the date of Pennell's death except Smith. (Doc. 135, at 6). A rational juror could find that the therapeutic amounts of methamphetamine found in Pennell's blood were not the but for cause of her death. (Doc. 135, at 8). A rational juror could also find that given the evidence that Pennell was dopesick on the date of her death and that Smith was the only person willing to sell her drugs that day, and that the fentanyl provided by Smith was the but for cause of Pennell's death. (Doc. 135, at 5-6). Viewing the evidence presented at trial in a light most favorable to the prosecution, as the Court must, a rational trier of fact could find beyond a reasonable doubt that Pennell used the fentanyl distributed by Smith and the fentanyl distributed by Smith was the but for cause of Pennell's death. *Delgado*, 367 F. Supp. 3d at 291 (citing *Carballo-Rodriguez*, 726 F.3d at 430); *see United States v. Lacy*, 446 F.3d 448, 451 (3d Cir. 2006) (finding that when deciding motions for judgment of acquittal, courts must "view the evidence in the light most favorable to the verdict, and must presume that the jury has properly carried out its functions of evaluating credibility of witnesses, finding the facts, and drawing justifiable inferences"); *see also Johnson*, 2022 WL 17627797, at *5.

B. SMITH IS NOT ENTITLED TO A NEW TRIAL.

In the alternative to a judgment of acquittal, Smith moves for a new trial. (Doc. 133, at 2). Smith raises the same arguments for the motion for a new trial, that no rational trier of fact could have found Smith distributed the drugs that were the but for cause of Pennell's death. (Doc. 134, at 5-6). The interests of justice do not require vacating the judgment and granting Smith a new trial. *See* Fed. R. Crim P. 33(a). The government presented approximately 32 witnesses and moved over 150 exhibits into the record at trial to support

the conviction. (Doc. 135, at 2, 5). The government presented eyewitness testimony, expert witness testimony, lab reports, and cell phone records and communications. (Doc. 135, at 5). As discussed *supra* section III.A., the evidence in the case included that McGuire purchased a bag of drugs wrapped in a blue latex glove from Smith and observed Pennel ingest the drugs; the blue latex glove had Smith's DNA on it; Pennell was sick before receiving the drugs and that Smith was the only person willing to sell drugs to Pennell on the date of her death; Pennell used the drugs on the way to the grocery store with Stevenson and her minor daughter approximately two hours before the paramedics were called; and the drugs provided by Smith contained a combination of illicit substances largely consisting of fentanyl, 4-ANPP, xylazine, heroin, and cocaine, which were all found in Pennell's blood at the time of her death. (Doc. 135, at 5-8). This is not an "exceptional case" warranting a new trial. *Delgado*, 367 F. Supp. 3d at 291; *see Johnson*, 2022 WL 17627797, at *5. Assessing the government's case, there is no basis to believe a serious miscarriage of justice occurred. *See Delgado*, 367 F. Supp. 3d at 291; *see also Johnson*, 2022 WL 17627797, at *5.

## IV.    CONCLUSION

For the foregoing reasons, Smith's motion for judgment of acquittal and new trial (Doc. 133) is **DENIED**. An appropriate Order follows.

**Dated: May 4, 2026**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**